UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO BANK, N.A., | Case No. 16 Civ. 8272 (PKC) |
| Petitioner, | |
| v. | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:_____<br>DATE FILED: _5/3/18_ |
| WATERFALL ASSET MANAGEMENT, LLC; MOISHE GUBIN; WRIGHTS MILL HOLDINGS, LLC; | |
| Respondents, | |
| and | |
| THE BANK OF NEW YORK MELLON, | |
| Intervenor. | |

_PKC_

## STIPULATION OF SETTLEMENT AND [PROPOSED] ORDER

WHEREAS the above action (the "Action") was commenced as a trust instruction

proceeding by Wells Fargo Bank, N.A. (the "Trustee") to resolve certain disputes relating to the

interpretation of an Indenture, dated as of November 18, 2004, by and among Tropic CDO IV,

Ltd. ("Tropic CDO IV"), as Issuer, Tropic CDO IV Corp., as Co-Issuer, and Wells Fargo Bank,

N.A., as Trustee and as Securities Intermediary (the "Indenture");

WHEREAS, by this Court's Civil Case Management Order, entered on January 4, 2017,

the Court ordered that:

> C. A notice of the scheduling order, attaching a copy of the scheduling order (the "Investor Notice"), shall be delivered by the Trustee to Parties in Interest, defined as holders of Notes and/or Preferred Shares issued by the Tropic IV CDO, on or before January 13, 2017, by sending a copy of the Investor Notice to Parties in Interest pursuant Section 13 of the Indenture.

> D. Any Parties in Interest that wish to appear in this action shall have until February 24, 2017 to: (a) file a notice of appearance in this action; (b) file a notice of motion to intervene, and (c) indicate to the Court whether they wish to be heard in support of or in

opposition to the relief sought by the motions of judgment on the pleadings. Pre-motion letter waived as to motion to intervene.

Docket Entry ("D.E.") 22 at 5;

WHEREAS the Investor Notice was delivered as directed;

WHEREAS the only interested parties to have appeared in this Action are Waterfall Asset Management, LLC ("Waterfall"), Moishe Gubin ("Gubin"), Wrights Mill Holdings, LLC ("WMH") and The Bank of New York Mellon, as the Swap Counterparty under the Indenture ("BONY") (collectively, the "Interested Parties");

WHEREAS the only parties to have filed and/or opposed motions under Rule 12(c) of the Federal Rules of Civil Procedure for Judgment on the Pleadings (the "Rule 12(c) Motions") – Waterfall, Gubin and WMH – have reached an agreement to settle all disputed issues in the Action along with the Trustee by taking certain actions, including, but not limited to, (i) implementing a corrective supplement to the Indenture (the "Corrective Supplement") and (ii) selling certain Optimum Securities held by Tropic CDO IV as collateral pursuant to the Indenture to Gubin or his designee (the "Optimum Securities Sale");

WHEREAS, BONY did not oppose or otherwise respond to the Rule 12(c) Motions, including, but not limited to, Waterfall's Motion under Rule 12(c) of the Federal Rules of Civil Procedure, filed August 7, 2017, requesting a determination that the Trustee is permitted or required to execute the Corrective Supplement;

WHEREAS, the Parties advised counsel for BONY of the agreement described herein on December 21, 2017 and requested a response by December 28, 2017, but counsel for BONY has not responded;

WHEREAS, pursuant to Article VIII of the Indenture, an opinion of counsel annexed hereto in final unexecuted form as Exhibit A (the "Opinion") will be obtained confirming the

2

Corrective Supplement is permitted by, and complies with, the provisions of the Indenture and all conditions precedent applicable thereto under the Indenture have been satisfied, and which Opinion will be executed and delivered to the Trustee on the Closing date and after the Court signs this Order and contemporaneous with the execution of the Corrective Supplement;

WHEREAS, pursuant to Article VIII of the Indenture, notice of the proposed Corrective Supplement was provided to the Ratings Agencies and BONY, as the Swap Counterparty (as those terms are defined in the Indenture), at least 10 days prior to the presentment of this Stipulation of Settlement to the Court, "request[ing] written confirmation that no Rating Agency then rating any Notes will, as a result of such supplemental indenture, cause the rating of any Notes to be reduced or withdrawn;"

WHEREAS no Ratings Agency has indicated that the rating of any Notes will be reduced or withdrawn as a result of the proposed Corrective Supplement;

WHEREAS WMH and Gubin have executed the Secondary Transaction Agreement, dated April 25, 2018 (the "Secondary Transaction Agreement"), pursuant to which WMH will sell its 18,150,000 Preferred Shares in Tropic CDO IV (the "Tropic Preferred Shares") to Gubin, and whereas such sale shall only become effective upon the entry of this Stipulation as an Order of the Court (the "Order"), and the payments required by the Secondary Transaction Agreement, including the Tropic Preferred Shares, shall be placed in escrow with Leader & Berkon LLP upon execution of the Secondary Transaction Agreement and shall be released on the Closing Date as described below;

WHEREAS the Trustee represents that Tropic CDO IV owns and holds as collateral pursuant to the Indenture, the trust preferred securities having a face value of $5,000,000.00 issued by Optimum Bank Holdings Capital Trust I ("the Optimum Securities");

3

WHEREAS the endorsement and entry of this Stipulation as an Order of the Court is a condition of the settlement among Waterfall, Gubin, WMH, and the Trustee;

NOW THEREFORE, THE PARTIES STIPULATE AND AGREE AND IT IS HEREBY ORDERED as follows:

1. The term "Closing Date" as used hereafter refers to the date three (3) business days after the entry of this Order.

2. The Trustee is authorized to and shall sell on the Closing Date the Optimum Securities to Gubin's designee, Preferred Shares, LLC, for $777,000 (as previously defined, the "Optimum Securities Sale"). Upon receipt of the $777,000 payment on the Closing Date, the Trustee shall deliver the Optimum Securities by DTC transfer to Leader & Berkon LLP, counsel for Preferred Shares, LLC.

3. Leader & Berkon LLP shall release the escrowed items as provided above and in the Secondary Transaction Agreement (and related agreements) upon receipt of the DTC transfer of the Optimum Securities on the Closing Date, and shall provide written confirmation to the Trustee and Waterfall on the Closing Date that payment has been made by Gubin to WMH pursuant to the Secondary Transaction Agreement (the "Payment Confirmation").

4. The consent of Gubin, or his designee, as purchaser of the Tropic Preferred Shares, to the Corrective Supplement shall become immediately effective upon receipt by the Trustee and Waterfall of the Payment Confirmation on the Closing Date.

5. Upon receipt of the Payment Confirmation on the Closing Date, the Trustee is authorized to and shall supplement the Indenture on the Closing Date pursuant to the terms of Supplemental Indenture No. 1 to the Indenture (the "Corrective Supplement"), annexed hereto as Exhibit B. The Trustee is authorized to rely on the Opinion.

4

6.      Provided that the Optimum Securities Sale and the Corrective Supplement occur on the Closing Date, counsel for the parties shall notify the Court in a letter filed no later than one business day after the Closing Date that both of these events have occurred as provided herein (the "Counsel Letter").

7.      Releases.

(a)      Provided that the Closing occurs on the Closing Date, upon filing of the Counsel Letter, **Waterfall, WMH, and Gubin**, each on behalf of themselves and their parents, subsidiaries, affiliates, agents, partners, representatives, officers, directors, shareholders, employees, assigns, predecessors, successors, heirs, executors, and administrators, for and in consideration of the promises and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, do hereby voluntarily, knowingly, and unconditionally, fully and forever release, acquit, and discharge **the Trustee**, and its parents, subsidiaries, affiliates, divisions, predecessors, successors and assigns, and each of their respective past and present officers, directors, employees, shareholders, trusts, beneficiaries, heirs, executors, administrators, attorneys, agents and representatives (the "Respondents' Released Parties"), from any and all claims, debts, liens, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, losses, actions and causes of action, of whatever kind or nature, at law or in equity, for or by reason of any event, transaction, matter or cause each may have against the other **asserted in this Action** regardless of whether such claims are based on contract, tort, statute, any other principle of law or equity or any written or verbal agreement, to the day of the date of this Release, except for obligations under this Stipulation of Settlement and Order; provided, however, that nothing in this Stipulation of Settlement and Order shall be construed or

operate to release or waive any claims or potential claims against the Respondents' Released Parties relating to or arising out of (a) the Issuer's Swap Agreement with BONY, including but not limited to any claims or potential claims relating to or arising out of the purported termination of the Swap Agreement, the enforcement of the Swap Agreement by the Respondents' Released Parties, or the action styled *Wells Fargo Bank, N.A.* v. *Waterfall Asset Mgmt, LLC*, 1:18-cv-00295 (S.D.N.Y.) (GHW), all of which are expressly preserved; (b) the Secondary Transaction Agreement; (c) the Security Agreement, dated April 25, 2018, between WMH and Gubin; and (d) the Escrow Agreement, April 25, 2018, among WMH, Gubin, Preferred Shares, LLC, and Leader & Berkon LLP.

(b)    Provided that the Closing occurs on the Closing Date, upon filing of the Counsel Letter, the **Trustee**, on behalf of itself and its parents, subsidiaries, affiliates, agents, partners, representatives, officers, directors, shareholders, employees, assigns, predecessors, successors, heirs, executors, and administrators, for and in consideration of the promises and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby voluntarily, knowingly, and unconditionally, fully and forever release, acquit, and discharge **Waterfall, WMH, Gubin**, and each of their parents, subsidiaries, affiliates, divisions, predecessors, successors and assigns, and each of their respective past and present officers, directors, employees, shareholders, trusts, beneficiaries, heirs, executors, administrators, attorneys, agents and representatives (the "Trustee's Released Parties") from any and all claims, debts, liens, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, losses, actions and causes of action, of whatever kind or nature, at law or in equity, for or by reason of any event, transaction, matter or cause each may have against the

6

other **asserted in this Action** regardless of whether such claims are based on contract, tort, statute, any other principle of law or equity or any written or verbal agreement to the day of the date of this Release, except for obligations under this Stipulation of Settlement and Order; provided, however, that nothing in this Stipulation of Settlement and Order shall be construed or operate to release or waive any claims or potential claims against the Trustee's Released Parties relating to or arising out of the Issuer's Swap Agreement with BONY, including but not limited to any claims or potential claims relating to or arising out of the purported termination of the Swap Agreement, the enforcement of the Swap Agreement by the Trustee's Released Parties, or the action styled *Wells Fargo Bank, N.A.* v. *Waterfall Asset Mgmt, LLC*, 1:18-cv-00295 (S.D.N.Y.) (GHW), all of which are expressly preserved.

(c)     Provided that the Closing occurs on the Closing Date, upon filing of the Counsel Letter, **Waterfall, WMH, and Gubin**, each on behalf of themselves and their parents, subsidiaries, affiliates, agents, partners, representatives, officers, directors, shareholders, employees, assigns, predecessors, successors, heirs, executors, and administrators, for and in consideration of the promises and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, do hereby voluntarily, knowingly, and unconditionally, fully and forever release, acquit, and discharge each other, the Issuer and the Co-Issuer, and each of their parents, subsidiaries, affiliates, divisions, predecessors, successors and assigns, and each of their respective past and present officers, directors, employees, shareholders, trusts, beneficiaries, heirs, executors, administrators, attorneys, agents and representatives (the "Respondents' Additional Released Parties") from any and all claims, debts, liens, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, losses, actions and causes

7

of action, of whatever kind or nature, at law or in equity, whether known or unknown, suspected or unsuspected, anticipated or unanticipated, direct or indirect, fixed or contingent, asserted or unasserted, or which may presently exist or which may hereafter arise or become known, for or by reason of any event, transaction, matter or cause each may have against the other **arising from or relating to the matters asserted in or that could have been asserted in this** Action regardless of whether such claims are based on contract, tort, statute, any other principle of law or equity or any written or verbal agreement to the day of the date of this Release, except for obligations under this Stipulation of Settlement and Order; provided, however, that nothing in this Stipulation of Settlement and Order shall be construed or operate to release or waive any claims or potential claims against the Respondents' Additional Released Parties relating to or arising out of (a) the Issuer's Swap Agreement with BONY, including but not limited to any claims or potential claims relating to or arising out of the purported termination of the Swap Agreement, the enforcement of the Swap Agreement by the Respondents' Additional Released Parties, or the action styled *Wells Fargo Bank, N.A.* v. *Waterfall Asset Mgmt, LLC*, 1:18-cv-00295 (S.D.N.Y.) (GHW), all of which are expressly preserved; (b) the Secondary Transaction Agreement; (c) the Security Agreement, dated April 25, 2018, between WMH and Gubin; and (d) the Escrow Agreement, dated April 25, 2018, among WMH, Gubin, Preferred Shares, LLC, and Leader & Berkon LLP.

8. **Venue.** The parties hereby irrevocably and unconditionally submit to the exclusive jurisdiction of this Court for any dispute, controversy or claim arising out of or relating to this Stipulation of Settlement and Order.

9. **Governing Law.** This Stipulation of Settlement and Order shall, in all respects, be interpreted, construed and governed by and in accordance with the internal laws of the State

8

of New York, disregarding any conflicts of law provision that would otherwise require the application of the law of another jurisdiction.

10.     **Entire Agreement.** This Stipulation of Settlement and Order and any agreements referenced herein along with any exhibits hereto contain the entire agreement and understanding among the parties regarding the settlement of the claims made in this Action and supersedes and replaces all prior negotiations and any prior agreements, written or oral, proposed or otherwise, among the parties concerning this Action, or the claims and defenses asserted herein.

11.     **Electronic Signatures; Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same instrument. Fax, PDF or other forms of electronic signatures are deemed to be original signatures.

12.     **Attorney Representation.** The parties acknowledge that each party has been represented by its own counsel and that each party has had an opportunity to consult with an attorney of its own choosing prior to the execution of this Stipulation and Order. The parties have read this Stipulation and Order in its entirety and fully understand the terms and provisions contained herein. The parties execute this Stipulation and Order freely and voluntarily and accept the terms, conditions and provisions of this Stipulation and Order and state that the execution by each of them of this Stipulation and Order is free from any coercion whatsoever.

13.     **Successors and Assigns.** This Stipulation and Order is binding upon and inures to the benefit of the successors, assigns and nominees of the parties hereto.

14.     **Severability.** If any term or provision of this Stipulation and Order shall be deemed to be invalid or unenforceable to any extent, the remainder of this Stipulation and Order

will not be affected thereby, and each remaining term and provision of this Stipulation and Order will be valid and be enforced to the fullest extent permitted by law.

15.    **Drafting.** The parties agree that this Stipulation and Order has been mutually drafted by them and that the Stipulation and Order shall be construed as though each party participated equally in its preparation and drafting.

16.    **Authority to Sign.** Each party executing this Stipulation and Order represents and warrants that it has not assigned, transferred or pledged any claim that is the subject of this Stipulation and Order, that the Stipulation and Order has been duly executed and delivered, and that the Stipulation and Order is valid and binding upon such party and enforceable in accordance with its terms, without the need for any approval of or consent by any other person or entity.

17.    **Settlement of Claims.** Upon the filing of the Counsel Letter, any and all claims by and among the Trustee, the Interested Parties, and all holders of Notes and/or Preferred Shares issued by the Tropic CDO IV (the "Holders") which are the subject of this action or otherwise arise out of or relate to the Corrective Supplement, the Optimum Securities Sale and/or the documents executed in connection with them, are hereby settled and extinguished.

18.    **Prohibition on Suit.** The Interested Parties and all holders of Notes and/or Preferred Shares issued by the Tropic CDO IV (the "Holders") are enjoined from instituting or pursuing any proceedings in any court, federal or state, against the Trustee arising out of the Corrective Supplement or the Optimum Securities Sale, or on account of any Interested Parties' or Holders' purported claims or rights regarding the same.

19.    **Release of Trustee.** The Trustee is hereby released and discharged from any and all liability by or to any party and/or person with respect to the Corrective Supplement or the

10

Optimum Securities Sale. The release and discharge in this paragraph is conditioned upon the Trustee's compliance with this Order.

20.    Upon filing of the Counsel Letter as described in Paragraph 6 herein, the above Action shall be dismissed and discontinued with prejudice, and the Clerk of the Court is directed to mark this case as closed on the docket.

SO ORDERED:

Honorable P. Kevin Castel

$5-3-18$

Dated: April 30, 2018
New York, New York

ALSTON & BIRD LLP

By: _____
Alexander S. Lorenzo
90 Park Avenue
New York, NY 10016
Tel: (212) 210-9400

*Attorneys for Wells Fargo Bank, National Association, in its capacity as Trustee*

KASOWITZ BENSON TORRES LLP

By: Michael A. Hanin /DAJ
Michael A. Hanin

1633 Broadway
New York, New York 10019
Tel: (212) 506-1700

*Attorneys for Respondent Waterfall Asset Management, LLC*

LEADER & BERKON LLP

By: _____
James K. Leader
Joshua K. Leader
630 Third Avenue
New York, NY 10017
Tel: (212) 486-2400

*Attorneys for Respondents Moishe Gubin and Wrights Mill Holdings, LLC*

11

# Exhibit A

May [_], 2018

Wells Fargo Bank, N.A.,
As Indenture Trustee
9062 Old Annapolis Road
Columbia, MD 21045

Re:    **Indenture dated as of November 18, 2004 between Tropic CDO IV
LTD., as Issuer, Tropic CDO IV Corp., as Co-Issuer, and Wells Fargo
Bank, N.A., as Trustee and Securities Intermediary (the "Indenture").**

Ladies and Gentlemen:

We have acted as special corporate opinion counsel to Waterfall Asset
Management, LLC, a Delaware limited liability company ("Client") for the limited purpose of
providing the Trustee with this opinion in connection with Sections 8.1(6) and 8.3 of the
Indenture. All capitalized terms used in this letter shall have the meanings ascribed thereto in the
Indenture or the Order (as defined below) unless otherwise defined herein.

In our capacity as special corporate opinion counsel to the Client, we have
examined and relied upon the following documents in the form they exist and have been made
available to us as of today (together, the "Opinion Documents"):

    i.    the Indenture;

    ii.    the proposed Corrective Supplement to the Indenture dated as of even date
with this opinion and attached hereto (the "Corrective Supplement";

    iii.    the Notice of Intent to Settle Trust Instruction Petition and Proposed
Corrective Supplement to the Indenture, dated April 19, 2018, from the
Trustee to the addressees thereof (the "Notice"); and

    iv.    the Stipulation of Settlement and Order, dated _____, 2018, (the
"Order").

Additionally, as the basis for the opinions set forth herein, we have examined and relied
upon originals or copies, certified or otherwise identified to our satisfaction, of statements and
certificates of public officials, and such other documents, papers and agreements as we have
deemed relevant and necessary to form a basis for our opinions subject to the limitations,
assumptions and qualifications noted below. We have relied with your permission upon such
statements and certificates of public officials and of officers of the Client with respect to the
factual matters contained therein.

With respect to all such examinations, we have assumed without investigation (i)
the authenticity of all documents furnished to us as originals and the genuineness of all
signatures on all such original documents; (ii) the conformity to original documents of all

Wells Fargo Bank, N.A.
May [ ], 2018
Page 2

documents furnished to us as photostatic, electronic or conformed copies of original documents; (iii) the due authorization, execution and delivery of all documents referred to herein by all parties thereto; (iv) the validity and accuracy of all certificates issued by public officials and corporate officers; and (v) the legal capacity of natural persons. With respect to any such certificates of public officials, we have not independently verified such certificates or any statements or reports included therein, and we are not responsible for any errors or omissions therein.

We have also assumed the due authorization, execution and delivery of the Opinion Documents by each of the parties thereto (including the Trustee, the Issuer and the Co-Issuer), that each such party has all requisite power and authority to perform its respective obligations under the Opinion Documents, the enforceability of the Opinion Documents with respect to each party thereto (except to the extent that enforceability may be limited by bankruptcy, insolvency and fraudulent conveyance laws, and principles governing creditors' rights in general and to general principles of equity), and the compliance with all applicable laws by each party thereto.

We have also assumed that all parties to the Opinion Documents are, on the date hereof, in compliance with all of their obligations and undertakings arising thereunder. As to certain matters of fact, we have with your permission examined and relied upon the factual representations and warranties contained in the Opinion Documents and in the certificates delivered in connection therewith, and we have assumed the accuracy of all such representations and warranties. We have not made any independent investigation or verification of such facts. As to any other facts material to this opinion which we did not independently establish or verify, we have relied upon statements and other representations of certain officers of the Client. We have assumed that you have knowledge of all of the information and disclosures contained in or referred to in the Opinion Documents; each opinion and statement herein is qualified by such information and disclosures. We have assumed and express no opinion with respect to the accuracy and completeness of representations and warranties set forth in the Opinion Documents.

We expressly draw your attention to the ultimate paragraph of Section 8.1 of the Indenture, and remind you that:

(x) as we understand it, holders of at least 66-2/3% of the Preferred Shares are consenting to the Corrective Supplement pursuant to paragraph number 4 of the Order;

(y) all claims by the Hedge Counterparty that the Corrective Supplement would have a material adverse effect on such Hedge Counterparty are extinguished by paragraph number 17 of the Order; and

(z) no rating agency has indicated that the Corrective Supplement would cause the rating of any Class of Notes to be reduced or withdrawn, and there is no reason to believe such reduction or withdrawal will occur.

We take note of and rely upon the execution of the Order by the United States District Court, Southern District of New York.

Wells Fargo Bank, N.A.
May [ ], 2018
Page 3

We call your attention to the fact that our engagement by the Client has been limited to the delivery of this opinion, and there may exist matters of a legal nature which could have a bearing on various obligations, commitments, legal status or financial condition of parties under the Opinion Documents with respect to which we have not been consulted or retained.

You acknowledge that as a law firm we provide no opinion or guidance on factual, economic or financial matters, including fairness from a financial point of view, and opine in this opinion only to the limited legal matters covered in enumerated opinions numbered 1 and 2 below, and then only from a legal perspective.

Our opinions below are based upon those laws, statutes, rules or regulations which in our experience are normally applicable to the transactions of the type contemplated in the Opinion Documents.

Based upon and subject to the foregoing, and subject further to all of the other assumptions, disclaimers, exceptions, qualifications and limitations hereinafter described, it is our opinion as of the date of this opinion that:

1. The Corrective Supplement does not adversely affect in any material respect the interests of any Noteholder.

2. The Corrective Supplement is permitted by, and complies with, the provisions of the Indenture and all conditions precedent applicable thereto under the Indenture have been adequately satisfied.

We express no opinion as to the enforceability of any provision of the Opinion Documents. We express no opinion as to any potential conflict of laws. We note that courts have discretion as to the enforcement of forum selection clauses.

In giving the opinions herein, the knowledge of this firm is expressly limited to acts, events and facts of which we presently have actual knowledge and to documents which we have actually examined; and no implied, imputed, attributed, apparent or constructive knowledge is to be attributed to or imputed to this firm, as special corporate counsel to the Client or otherwise, by you in interpreting or relying upon the opinions herein expressed.

We render no opinion with respect to (i) any Federal or state securities laws, (ii) laws and regulations relating to commodity (and other) futures and indices and other similar instruments, (iii) the Federal, state or local tax ramifications of any of the transactions referred to in this letter, (iv) pension and employee benefit laws and regulations such as ERISA; (v) antitrust and unfair competition laws and regulations; (vi) compliance with fiduciary duty requirements; (vii) fraudulent transfer and fraudulent conveyance laws; (viii) Federal and state laws governing financial institutions; (ix) Federal or state civil rights, equal opportunity, anti-discrimination and similar laws, including ADA and EEOC; (x) racketeering laws and regulations (e.g., RICO); (xi) laws, regulations, and policies concerning: (A) national and local emergency; (B) possible judicial deference to acts of sovereign states; and (C) criminal and civil forfeiture laws; (xii) public utility laws and regulations; (xiii) patent, copyright, trademark, and other intellectual property laws and regulations; (xiv) health and safety laws and regulations; (xv) labor laws and regulations; (xvi) Federal and state criminal laws and other statutes of general application to the

Wells Fargo Bank, N.A.
May [ ], 2018
Page 4

extent they provide for criminal prosecution (e.g., mail fraud and wire fraud statutes); (xvii) the Foreign Corrupt Practices Act and similar laws and treaties; (xviii) the USA Patriot Act (Title III of Public L. 107-56) or other anti-money laundering laws or regulations; (xix) (A) the Trading with the Enemy Act of 1917, 50 U.S.C.A. app. §1 et seq., of the United States; (B) the International Emergency Economic Powers Act, 50 U.S.C.A. §1701 et seq., of the United States; or (C) all United States Executive Orders (including the September 24, 2001 Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit or support Terrorism), rules, regulations (including regulations of the Office of Foreign Assets Control of the U.S. Department of the Treasury), and other official acts promulgated under any of the foregoing; (xx) the statutes and ordinances, the administrative decisions, and the rules and regulations of counties, towns, municipalities, and special political subdivisions (whether created or enabled through legislative action at the Federal, state, or regional level); (xxi) Federal and state laws concerning ownership filing requirements (such as Hart-Scott-Rodino and Exon-Florio); (xxii) Federal, state and local environmental laws; (xxiii) any real property law, including Federal, state and local zoning, development or air rights, planning and land use laws; or (xxiv) judicial decisions to the extent that they deal with any of the foregoing.

The opinions we express are based upon our examination of the statutes and regulations, if any, of such jurisdictions as are reproduced in accepted unofficial publications. There may exist statements which are not currently available to us through such publications.

This opinion is limited to the internal laws of the State of New York, and the Federal laws of the United States applicable therein, and we express no opinion as to whether the laws of any particular jurisdiction apply, and no opinion to the extent that the laws of any jurisdiction other than those identified above are applicable to the Opinion Documents or the transactions contemplated thereby.

We are qualified to practice law in the State of New York, and, accordingly, we do not purport to be experts on, nor to express any opinion herein concerning, any law other than the law of the State of New York. We are not members of the bar of any jurisdiction other than the State of New York. This opinion is being rendered, and assigned and released from our possession within the State of New York on the date hereof. By your acceptance of this letter, you irrevocably agree that no (i) action or proceeding may be brought in connection with or relating to this opinion except in the Federal and State courts located in the City and State of New York, and (ii) you may not bring suit with respect to this opinion unless and until you waive any protections you have against us asserting counterclaims against you.

Where, in rendering an opinion, we have limited the scope of our inquiry and review, we have done so with your consent.

We note that the American Bar Association has indicated that law firms rendering opinions should not be considered financial guarantors of related transactions, and we expressly disclaim such a role, and we have been informed that you do not look to us to serve that role.

The opinions expressed in this letter are rendered as of the date hereof and we assume no obligation to supplement or update this opinion if any applicable laws change after the date hereof or if we become aware of any facts that might change the opinions expressed herein after the date hereof.

Wells Fargo Bank, N.A.
May [ ], 2018
Page 5

We disclaim any undertaking to advise you about matters not specifically opined to herein. The opinions expressed in this letter are limited to the matters set forth in this letter, and no other opinions should be inferred beyond the matters expressly stated. The opinions expressed herein are rendered as of the date hereof and we express no opinion as to circumstances or events that may occur subsequent to such date and we therefore assume no obligation to update or supplement this opinion. The opinions expressed herein are subject to the qualifications and assumptions described herein and may be relied upon solely by the addressee hereof for the purpose set forth above, and by no other persons and for no other purpose and you are not authorized to assign, release, publish, communicate or otherwise divulge the contents of this letter to any third party without the prior written consent of Kleinberg, Kaplan, Wolff & Cohen, P.C.

Very truly yours,

KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.

# Exhibit B

SUPPLEMENTAL INDENTURE NO. 1

To

INDENTURE

Dated as of November 18, 2004

Between

TROPIC CDO IV LTD.,

Issuer

TROPIC CDO IV CORP.,

Co-Issuer

and

WELLS FARGO BANK, N.A.

Trustee and Securities Intermediary

THIS SUPPLEMENTAL INDENTURE NO. 1, dated as of _____ __, 2018 (the "Corrective Supplement") and effective as of _____ __, 2018, to the INDENTURE, dated as of November 18, 2004 (the "Indenture"), among TROPIC CDO IV LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands (the "Issuer"), TROPIC CDO IV CORP., a Delaware corporation (the "Co-Issuer" and, together with the Issuer, the "Co-Issuers") and WELLS FARGO BANK, N.A., a national banking association, as trustee (the "Trustee").

WITNESSETH

WHEREAS, the Co-Issuers and the Trustee entered into the Indenture;

WHEREAS, the Co-Issuers and the Trustee have agreed to execute the Corrective Supplement pursuant to Section 8.1 of the Indenture; and

WHEREAS, pursuant to Section 8.3 of the Indenture, the Trustee has been furnished with an Opinion of Counsel to the effect that the execution of the Corrective Supplement is authorized and permitted by the Indenture, and that all conditions precedents applicable thereto have been satisfied.

NOW, THEREFORE, the parties hereto agree as follows:

SECTION 1. Defined Terms.

For purposes of this Corrective Supplement, capitalized terms not defined herein shall have the meanings assigned to them in the Indenture.

SECTION 2. The Corrective Supplement.

(a)    Section 10.3(d) of the Indenture is hereby supplemented by adding, after the phrase "66-2/3% of the Preferred Shares may" the language ", subject to the Consent of the Requisite Noteholders."

(b)    Section 12.2 of the Indenture is hereby supplemented by adding, after the phrase "66-2/3% of the Preferred Shares may" the language ", subject to the Consent of the Requisite Noteholders."

SECTION 3. Effect of Corrective Supplement.

Upon execution of this Corrective Supplement, the Indenture shall be, and be deemed to be, modified and amended, effective as of _____ __, 2018, in accordance with Section 8.1 of the Indenture and the respective rights, limitations, obligations, duties, liabilities and immunities of the parties hereto shall hereafter be determined, exercised and enforced subject in all respects to such modifications and amendments, and all the terms and conditions of this Corrective Supplement shall be deemed to be part of the terms and conditions of the Indenture for any and all purposes. Except as modified and expressly amended by this Corrective Supplement, the Indenture is in all respects ratified and confirmed, and all the terms, provisions and conditions thereof shall be and remain in full force and effect.

2

SECTION 4. Governing Law.

This Corrective Supplement shall be construed in accordance with the substantive laws of the State of New York (without regard to conflict of law principles) and the obligations, rights and remedies of the parties hereto shall be determined in accordance with such laws.

SECTION 5. Severability of Provisions.

If any one or more of the provisions or terms of this Corrective Supplement shall be for any reason whatsoever held invalid, then such provisions or terms shall be deemed severable from the remaining provisions or terms of this Corrective Supplement and shall in no way affect the validity or enforceability of the other provisions or terms of this Corrective Supplement.

SECTION 6. Section Headings.

The section headings herein are for convenience of reference only, and shall not limit or otherwise affect the meaning hereof.

SECTION 7. Counterparts.

This Corrective Supplement may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

*[Signature page follows]*

3

SECTION 4. Governing Law.

This Corrective Supplement shall be construed in accordance with the substantive laws of the State of New York (without regard to conflict of law principles) and the obligations, rights and remedies of the parties hereto shall be determined in accordance with such laws.

SECTION 5. Severability of Provisions.

If any one or more of the provisions or terms of this Corrective Supplement shall be for any reason whatsoever held invalid, then such provisions or terms shall be deemed severable from the remaining provisions or terms of this Corrective Supplement and shall in no way affect the validity or enforceability of the other provisions or terms of this Corrective Supplement.

SECTION 6. Section Headings.

The section headings herein are for convenience of reference only, and shall not limit or otherwise affect the meaning hereof.

SECTION 7. Counterparts.

This Corrective Supplement may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

*[Signature page follows]*

3

IN WITNESS WHEREOF, the undersigned have caused their names to be signed hereto by respective officers thereunto duly authorized as of the ___th day of _____, 2018.

TROPIC CDO IV LTD., as Issuer

By:_____
Name:
Title:

in the presence of:

_____
Witness

TROPIC CDO IV CORP., as Co-Issuer

By:_____
Name:
Title:

WELLS FARGO BANK, N.A., as Trustee

By:_____
Name:
Title: